UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
x
LEON CAMPBELL,

                 Plaintiff,

       -against-

THE CITY OF NEW YORK, OFFICER LEON
NATAL, CAPTAIN ADOLFO FLORES,

                 Defendants.
-------------------------------------------------------------
x

**MEMORANDUM AND ORDER**
Case No. 09-CV-3306 (FB)(JO)

*Appearances*:
*For the Plaintiff*:
NKEREUWEM UMOH, ESQ.
25 Bond Street, 2nd Floor
Brooklyn, NY 11201

*For the Defendant*:
MICHAEL A. CARDOZO, ESQ.
Corporation Counsel, City of New York
ANDREW THOMAS MYERBERG, ESQ.
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007

**BLOCK, Senior District Judge:**

         Currently before the Court are Plaintiff Leon Campbell's two federal claims,

brought pursuant to 42 U.S.C. § 1983 ("§ 1983"): an excessive force claim against correction

officer Leon Natal, and a denial of medical care claim against Natal and correction officer

Adolfo Flores.   Plaintiff also brings state-law claims against the City of New York ("the

City"), Natal and Flores (collectively, "defendants").[1] Defendants move for partial summary

judgment as to (1) plaintiff's denial of medical care claim against the individual defendants

and, (2) plaintiff's state law claims against all defendants.

---

[1] Plaintiff originally brought, and has since withdrawn, claims for conspiracy against all
of the defendants, *Monell* claims against the City, and claims for excessive force against
Flores.

# I

The following facts are taken from defendants' Rule 56.1 statement and supporting documentation.  Plaintiff did not submit a counter-statement under Rule 56.1.  Accordingly, the Court is permitted to take as true the assertions in defendants' Rule 56.1 statement.  *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001).

During the period relevant to this lawsuit, plaintiff was an inmate at the Anna M. Cross Center ("AMKC") on Rikers Island.  Natal and Flores were corrections officers employed by the New York City Department of Corrections ("DOC") and working at AMKC.

In his deposition, plaintiff stated that on September 6, 2007 Natal "attacked" him, grabbing his arm and throwing him onto a wooden chair.  Ex. B, Campbell Tr. 13:11; 54:15.  Plaintiff filed a grievance about the incident.  AMKC personnel and the DOC Investigations Division ("ID") conducted an investigation and determined that plaintiff's allegations were unfounded.  Plaintiff stated in his deposition that Natal attacked him again on September 23, 2007, pushing plaintiff into the wall and floor at the AMKC mental health clinic and punching him in the head.  Plaintiff also said in his deposition that Flores arrived at the mental health clinic shortly after the September 23rd incident and asked plaintiff to explain what had happened.

According to an "Injury to Inmate" report dated September 23, 2007, at approximately 5:45 p.m. that day plaintiff "accidentally trip[ed] and bang[ed] his head on the partition" at the mental health clinic. Ex. D, Injury to Inmate Report.  At approximately 7 p.m. on that date, plaintiff received medical treatment from Doctor Aslam Kadri.  The

2

doctor diagnosed plaintiff with a "superficial abrasion" on his right cheek.  Def's 56.1 Stmt.

¶ 5; Ex. D, Injury to Inmate Report.  The doctor did not note any bleeding to the eyes and

ears or trauma to the abdomen or chest.  The doctor cleaned plaintiff's injury with saline and

Bacitracin.  Plaintiff also received Motrin.  An x-ray of plaintiff's mandible was taken and,

according to an "Injury to Inmate" report completed on September 28, 2007, was "negative."

Def's 56.1 Stmt. ¶ 9; Ex. D, Injury to Inmate Report.  Photographs of plaintiff's injuries, taken

on September 28th, show no injuries aside from the scratch on plaintiff's right cheek.  AMKC

personnel and ID investigated the incident and determined that plaintiff's allegations of

abuse were unfounded.

II

## A. Denial of Medical Care

Plaintiff first asserts that he was denied adequate medical care for the injuries

he sustained on September 23, 2007.  As a preliminary matter, plaintiff refers vaguely to the

failure of "defendants" to provide him with adequate medical care, without specifying

which of the defendants was personally involved in the alleged violation.  *See Wright v.

Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("Personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.").  Based

upon the record, however, the core of plaintiff's argument is that Flores was present when

plaintiff reported for medical treatment and instructed the doctors, who are not defendants,

to write false injury reports.  *See* Ex. B, Campbell Tr. 98:14-99:11.  Plaintiff has withdrawn his

§ 1983 claim against the City, and does not allege that Natal was personally involved in

denying him medical care.  The Court therefore only considers the viability of plaintiff's

3

denial of medical care claim against Flores.

## 1. Standards Governing Denial of Medical Care Claim

The United States Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  To establish an unconstitutional denial of medical care, a plaintiff must show: (1) objectively, that the alleged deprivation is "sufficiently serious," and (2) subjectively, defendants acted with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1995).

The inquiry for the objective element requires a "threshold showing of serious illness or injury." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003); *see Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (the alleged deprivation must have occurred in response to a medical "condition of urgency, one that may produce death, degeneration, or extreme pain.").  "Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (internal quotation marks omitted).  This inquiry also requires the court "to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 279.

The subjective element "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with

4

knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 826 (1994). "An official

acts with the requisite deliberate indifference when that official knows of and disregards an

excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard

of 'recklessness' as used in criminal law." *Smith*, 316 F.3d at 183-84. The prison official must

be "intentionally denying or delaying access to medical care or intentionally interfering with

treatment once prescribed." *Estelle*, 429 U.S. at 104.

**2. Analysis**

Plaintiff fails to satisfy either component of the denial of medical care claim.

First, plaintiff cannot prove that he suffered from an objectively serious medical condition.

The available records– the "Injury to Inmate" medical records completed by DOC personnel

and photographs of plaintiff's injury– show that plaintiff's only injury was the scratch on his

cheek. A doctor cleaned the wound and plaintiff received painkillers within 90 minutes of

that injury. Without more, that "superficial abrasion" cannot be deemed a "condition of

urgency" that would impact plaintiff's daily activities or cause him substantial pain;

plaintiff's injury is far less grievous than the type of medical problems this Circuit has

deemed "sufficiently serious." *See, e.g. Hemmings*, 134 F.3d at 106-07 (failure to treat a

ruptured Achilles tendon); *Brock v. Wright*, 315 F.3d 158, 160 (2d Cir. 2003) (failure to treat

a painful and disfiguring facial keloid). Plaintiff does not allege that he suffered injuries

beyond the facial abrasion. Nor does he argue that this injury, combined with the allegedly

deficient medical care he received, caused him substantial pain and interfered with his daily

life. Plaintiff offers a conclusory statement that defendants fabricated the "Injury to Inmate"

reports to show that his injuries were the result of a fall rather than an assault, and "thus

[those medical records] cannot be relied upon."  Pl's Mem. of Law.  However, plaintiff does not submit any evidence supporting that argument or contradicting the contents of the available records.  A reasonable jury could not conclude that plaintiff suffered from a "serious" medical condition for the purposes of his Eighth Amendment claim.

Second, plaintiff does not show that Flores knew of and disregarded an excessive risk to his safety.  As proof that Flores possessed the requisite state of mind, plaintiff argues that Flores delayed the provision of medical treatment to allow time to "conjure up an alternative story as to how plaintiff was injured" and that Flores instructed the doctor to lie on plaintiff's medical records.  Pl's Mem. of Law at 5.  He further argues that because the "Injury to Inmate" reports state that plaintiff suffered a fall, not an assault, "the treatment plaintiff would receive based on those two injuries would vary."  *Id.* at 4.  These conclusory arguments do not support a determination that Flores recklessly disregarded a risk to plaintiff's health, and there is no evidence that Flores intentionally denied plaintiff necessary medical care or that Flores's actions compromised plaintiff's health.

In fact, the evidence is to the contrary.  Plaintiff waited less than two hours for medical treatment for a cut on his cheek, an injury which did not present an excessive risk to his safety.  The doctor cleaned the abrasion and treated it with a topical antibiotic, which is a reasonable response to this sort of injury. The doctor also examined his chest, abdomen, eyes and ears, and plaintiff received an x-ray of his mandible, suggesting an abundance of caution.  Flores did not interfere with this medical treatment.  To the extent that plaintiff contends that he should have received more treatment, or a different kind of treatment, this argument fails because "mere disagreement over the proper treatment does not create a

6

constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Accordingly, summary judgment is granted on plaintiff's denial of medical care claim.

## B. State-Law Claims

Because the case will proceed to trial on a federal claim – plaintiff's § 1983 excessive force claim against Natal– there is no basis for the Court to decline to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(c)(3); the Court cannot invoke § 1367(c)(1) or (c)(2), because the state-law claims do not predominate over the federal claim or raise any novel or complex state-law issues. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 447 (2d Cir. 1998) (holding that a district court must exercise supplemental jurisdiction over a state law claim if the requirements of § 1367(a) unless one of the exceptions set forth in § 1367(c) applies).

Plaintiff does not oppose the motion for summary judgment on the state-law claims.  Nonetheless, defendants must meet their burden to show that no material issue of fact remains for trial. *See Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[E]ven when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden.").

## 1. State-Law Tort Claims

Plaintiff sets forth state-law claims against the City and against the individual defendants for assault and battery, intentional infliction of emotional distress, negligence, negligent retention of employment services and negligent infliction of emotional distress against the City and against the individual defendants.  Defendants contend that these

claims are time-barred.

With respect to plaintiff's tort claims against the City, New York law requires that plaintiffs bringing a tort claim against a municipal defendant file a notice of claim within 90 days after the claim arises and commence the action within one year and 90 days from the date on which the cause of action accrued.  N.Y. Gen. Mun. Law §§ 50-e, 50-I.  The events giving rise to plaintiff's claims occurred on September 6, 2007 and September 23, 2007. Plaintiff was therefore required to file a notice of claim for any claims relating to September 6th by December 7, 2007, and for any claims relating to September 23rd by December 24, 2007.  Plaintiff was also required to commence the action against the City for any claims relating to September 6th by December 5, 2008, and for any claims relating to September 23rd by December 22, 2008.  Although plaintiff filed a notice of claim on October 9, 2007, he did not commence this action until July 30, 2009, approximately seven months too late.

With respect to plaintiff's intentional tort claims against Natal and Flores, New York law provides a one year statute of limitations.  N.Y. C.P.L.R. § 215(3); *see City of N.Y. Admin. for Children's Services*, 50 A.D.3d 1087, 1088 (2d Dep't 2008) (holding that statute of limitations for intentional infliction of emotional distress is one year).  This required plaintiff to commence his action against Natal and Flores for assault and battery and intentional infliction of emotional distress, by September 6, 2008 for any claims relating to September 6, 2007, and by September 23, 2008 for any claims relating to September 23, 2007.  Plaintiff commenced this action on July 30, 2009.  This was well outside the limitations period for any intentional tort claim against the individual defendants, and those claims are time barred.

In contrast, under New York law plaintiff's claims for negligence and negligent infliction of emotional distress against the individual defendants are governed by a three-

8

year statute of limitations.[2]  N.Y. C.P.L.R. § 214.  This required him to commence his action

asserting state law negligence claims by September 6, 2010 and/or September 23, 2010.

Because he filed his complaint more than a year prior to the expiration of either limitations

period, plaintiff's negligence claims against the individual defendants are not time barred,

and defendants' motion for summary judgment with respect to these claims is denied.

**2. New York State Constitution Claim**

With respect to plaintiff's claim against Natal and the City for excessive force

under Article 1, Section 12 of the New York State Constitution, defendants correctly assert

that the New York State Constitution "is unavailable where an alternative remedy will

adequately protect the interests at stake." *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628-29 (S.D.N.Y.

2009).  District courts in this circuit have consistently held that "there is no private right of

action under the New York State Constitution where, as here, remedies are available under

§ 1983."  *DeVito v. Barrant*, No. 03-CV-1927, 2005 WL 2033722, at *7 (E.D.N.Y. 2005) (citing

*Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 446-47 (S.D.N.Y. 1999)).  Plaintiff has stated

a viable  excessive force claim under § 1983 against Natal.  Accordingly, plaintiff's claim

against Natal  pursuant to Article 1, Section 12 of the New York State Constitution is

dismissed.

Because remedies are not available under § 1983 for plaintiff's excessive force

claim against the City, however, plaintiff's state constitution claims against the City are not

dismissed.  *See, e.g. Vilkhu v. City of N.Y.*, No. 06-CV-2095, 2008 WL 1991099, at *9 (E.D.N.Y.

2008) ("As part of his New York state constitution claims, plaintiff argues that the City, as

---

[2] Defendants' memorandum of law fails to distinguish plaintiff's state law negligence claims from his intentional tort claims, addressing only the statute of limitations for intentional torts.

employer of the officers, is responsible for their conduct under respondeat superior.  Because § 1983 does not recognize respondeat superior liability. . . plaintiff's state constitution claims against the City" survive).  Defendants' motion for summary judgment with respect to plaintiff's New York state constitutional claim against the City is therefore denied.

**III**

For the foregoing reasons, defendants motion for summary judgment is granted with respect to plaintiff's federal claim for denial of medical care against Natal and Flores.  Summary judgment is also granted with respect to plaintiff's state law tort claims against the City, state law intentional tort claims against Natal and Flores, and the New York State constitutional claim against Natal.

Defendants' summary judgment motion is denied, however, with respect to plaintiff's state-law negligence claims against the individual defendants and the excessive force claim against the City under the New York State constitution.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
December 15, 2011

10